UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| MATTHEW CLARK, | ) |
|  | ) |
| Plaintiff, | ) |
|  | )   06-2025 |
| v. | ) |
|  | ) |
| ILLINOIS CENTRAL RAILROAD | ) |
| COMPANY d/b/a CANADIAN | ) |
| NATIONAL/ILLINOIS CENTRAL | ) |
| RAILROAD COMPANY, | ) |
|  | ) |
| Defendant. | ) |

ORDER

    The plaintiff, Matthew Clark ("Clark"), was at all relevant times employed by the defendant, Illinois Central Railroad Company ("the railroad"). On June 30, 2005, Clark was working as a switchman/conductor at the Grand Avenue Yard in Decatur, Illinois. During the course of his duties that day, Clark and several other employees were assembling railroad cars to make up a train. Clark was walking alongside a train that was backing up; when the train stopped, he pulled the pin between two cars and lost his footing on the ballast[1] in the walkway between two tracks. Clark fell and injured his back and left knee. He claims his injuries were caused by large and unstable rocks in the walkway ballast. Clark brings this action pursuant to the Federal Employers Liability Act ("FELA"), 45 U.S.C. § 51 *et seq*. He also brings a claim of negligence per se.

    The railroad has filed a motion for summary judgment. For the following reasons, the motion [32] is denied.

ANALYSIS

---

[1] Ballast is crushed rock used to construct one or more layers above the subgrade of the railroad roadbed. Ballast is placed under the track to transmit and distribute the load of the track and railroad cars to the subgrade, keep the track in place, and provide adequate drainage for the track. Ballast also provides for air space in the track structure, adds resiliency and energy absorption, and facilitates track maintenance. Because of the stress from the loads of the railroad cars, ballast must be made from durable aggregate that can withstand the loads and resist fracture and abrasion. In order to perform these functions, ballast must be made of tough, coarse aggregate that is sufficiently large and irregular to interlock.

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Any discrepancies in the factual record should be evaluated in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (*citing Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)). The party moving for summary judgment must show the lack of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. A party opposing summary judgment bears the burden to respond, not simply by resting on the pleadings, but by affirmatively demonstrating that there is a genuine issue of material fact for trial. *See* Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 322-324. "If [the nonmovant] does not [meet his burden], summary judgment, if appropriate, shall be entered against [the nonmovant]." *See* Fed. R. Civ. P. 56(e).

FELA is the exclusive remedy for railroad workers who claim work-related injury caused by an employers' negligence. *Myers v. Illinois Cent. R.R. Co.*, 753 N.E.2d 560, 564 (Ill. App. Ct. 2001). As in common-law negligence suits, the FELA plaintiff must show duty, breach, foreseeability, and causation. *Williams v. National R.R. Passenger Corp.*, 161 F.3d 1059, 1062 (7th Cir. 1998). However, the FELA plaintiff has a significantly lighter burden as to causation; he must show that "the employer's negligence played any part, even the slightest, in producing the injury. *Williams*, 161 F.3d at 1061.

The Federal Railroad Safety Act ("FRSA") was enacted to "promote safety in every area of railroad operations and reduce railroad-related accidents and incidents." 49 U.S.C. § 20101. "Regulations [under the FRSA] are promulgated and enforced by the Federal Railroad Administration ("FRA")." *Michigan S. R.R. Co. v. City of Kendallville*, 251 F.3d 1152, 1154 (7th Cir. 2001). FRSA generally precludes a FELA claim when an employer has adhered to the FRA regulation "cover[ing] the subject matter" of the claim, because FRA regulations essentially set the standard of care owed to the injured party. *See generally Norfolk S. Rwy. Co. v. Shanklin*, 529 U.S. 344 (2000) (discussing federal regulations as "standard for adequacy" that displaces state tort law).

According to the railroad, the FRA's regulations on ballast[2] "cover the subject matter" of ballast, which Clark claims to be the sole cause of his injury. The railroad, through its expert, states that the ballast was in full conformance with FRA regulations, 49 C.F.R. § 213, on the day of Clark's accident.

However, the regulations are silent on ballast size. The railroad's expert, Dr. Donald

---

[2] 49 C.F.R. § 213.103. The regulation specifies that the track shall be supported by material that will transmit and distribute the load of the track and railroad cars to the subgrade; keep the track in place; provide adequate drainage for the track; and maintain the proper track alignment. The regulation does not specify the size of ballast to be used.

Uzarski, explains that the American Railway Engineering and Maintenance of Way Association (AREMA) guidelines represent an industry consensus of ballast size to be used under different circumstances, but companies are free to employ sound engineering reasoning to come up with gradations of ballast that meet their specific requirements. Dr. Uzarski discusses the various track safety standards but notes, "49 C.F.R. § 213 does not specifically address walkway defects nor does it address ballast size defects."[3] He explains that fouling of the ballast[4] *could* constitute a defect under FRA regulations, and although he did note some fouling, the defect is subjective and he believed the ballast was not so fouled as to constitute a violation of the regulations as they pertain to Class 1 track[5] – the sort of track present at the location of Clark's fall. Fouling is not claimed to be the cause of Clark's fall.

The railroad cites numerous cases[6] purporting to show that there can be no FELA or common-law negligence claim if the railroad is not in violation of FRA regulations. The court finds these cases to be factually inapposite or otherwise unpersuasive. There are no regulations specifying the size of ballast to be used in different circumstances because "the choice of any given ballast size is very site specific."[7]  But the essence of the railroad's argument amounts to this: (1) the FRA regulation "covers the subject matter" of ballast; (2) the regulation does not mandate a ballast size, so *any* ballast size of the railroad's choosing conforms to the regulations; and, consequently, (3) no FELA claim may arise from the railroad's use of a particular ballast size.

Several courts have rejected this argument, at least with regard to walkways. The recent decisions from within this circuit are highly persuasive. The Illinois Commerce Commission ("ICC") adopted regulations requiring railroads to provide walkways next to yard tracks constructed after February 15, 2005.[8] *See Norfolk S. Rwy. Co. v. Box*, 2007 WL 1030320, at *1 (N.D. Ill. Mar. 30, 2007); 92 Ill. Admin. Code 1546.10. The regulations established general

---

[3] Uzarski Report at 27.

[4] Fouling occurs when grain and meal are loaded into rail cars and spill onto the ballast. It can also occur from ballast degradation (breaking, over time, of the rocks into smaller pieces as they grind against each other) and subgrade intrusion (clay soil underneath the ballast working its way up and into the ballast).

[5] Class 1 track is used for trains traveling at speeds less than 10 miles per hour. Yard tracks are often Class 1 tracks.

[6] Some of the cited cases involve injuries from excessive train speeds, inadequate warning devices at crossings, etc. Almost all are from courts outside this circuit. Few, if any, deal with the precise problem presented in this case.

[7] Uzarski Dep. 12.

[8] The area where Clark sustained his injury was constructed prior to this date.

requirements for the design and construction of the walkways. *Box*, 2007 WL 1030320, at *1; 92 Ill. Admin. Code 1546.20, 1546.110, 1546.120. Norfolk Southern Railway Co. challenged the regulation, and the United States District Court, Northern District of Illinois, determined that the FRSA did not expressly preempt the state regulations because the FRSA/FRA do not "cover the same subject matter . . . – employee walkways in railroad yards." *Box*, 2007 WL 1030320, at *15. The court left open the possibility of implicit preemption if the railroad could show that the state rules make it impossible to comply with federal regulations, a determination that could not be made on summary judgment. *Box*, 2007 WL 1030320, at *15.

Two months later, the United States District Court, Northern District of Indiana, denied a railroad's motion for summary judgment on a FELA walkway case. *See Wilcox v. CSX Transp., Inc.*, 2007 WL 1576708 (N.D. Ind. May 30, 2007). The plaintiff claimed he "developed injury over time from working on ballast that was large, oversized, loose, untamped or otherwise unsuitable[.]" *Wilcox*, 2007 WL 1576708, at *1. The court stated, "The plain language of § 213.103 does not state, expressly or by implication, that the regulation was intended to provide for the safety of railroad employees, or that it was promulgated by the FRA with a clear intent to occupy the field of safety regulation of ballast completely." *Wilcox*, 2007 WL 1576708, at *7.

The district judge in *Wilcox* did not disagree with the defendant's contention that there is a "split of authority" on this matter, but stated that the split is properly resolved by Congress and/or the FRA to clarify the scope and intent of the regulations. *Wilcox*, 2007 WL 1576708, at *7. Instead, the judge relied upon an opinion in an earlier case from that court (*DeGrasse v. CSX Transp., Inc.*) where it was determined that claims for injuries sustained on large walkway ballast were not precluded by the FRA/FRSA because the federal regulations did not cover the subject matter of employee safety . *See Wilcox*, 2007 WL 1576708, at *5 (*citing Degrasse* unpublished decision). *DeGrasse*, in turn, quoted extensively from an earlier case before the same court, *Grimes v. Norfolk So. Rwy. Co.*, 116 F. Supp. 2d 995 (N.D. Ind. 2000). The plaintiff in *Grimes* was injured when he walked alongside a train and stepped into a basketball-size hole.[9] *Wilcox*, 2007 WL 1576708, at *6.

> Every circuit that has considered the issue of walkways has concluded that the FRSA is silent on the question of walkways. The regulations are directed toward creating a safe roadbed for trains, not a safe walkway for railroad employees who must inspect the trains. In view of the fact that this railroad requires its employees to perform numerous trackside inspections of its trains for various reasons, this Court declines to find anything in the regulations cited by the defendant that precludes this Plaintiff from asserting that the railroad was negligent for failing to provide a safe place to

---

[9] The injury in *Grimes* was thus more similar to the injury suffered by Clark – a sudden trauma, rather than an injury developing over time as in *DeGrasse* and *Wilcox*. However, all involve the distinct issue of injuries from walkway ballast.

walk. . . . The defendant . . . has asked this Court to extend *Waymire*[10] well beyond its holding to preclude a negligence claim under FELA for any conduct by the railroad even remotely covered by a regulation enacted under FRSA. This Court declines the invitation to do so.

*Wilcox*, 2007 WL 1576708, at *6 (*quoting Grimes*, 116 F. Supp. 2d at 1002-03).

A case from the Northern District of Illinois shows that the railroads have, for some years, argued the preclusion of FELA claims arising from ballast size on walkways. In *Hottenstein v. Burlington N. R.R Co.*, 1998 WL 378429 (N.D. Ill. July 1, 1998), the court ruled that the plaintiff was not precluded by FRA/FRSA regulations from arguing at trial that smaller walkway ballast would have prevented his injury. *Hottenstein*, 1998 WL 378429, at *4. The court noted implicit support in *Taylor v. Illinois Cent. R.R. Co.*, 8 F.3d 584 (7th Cir. 1993), for the proposition that ballast size is not preempted by federal regulations. In *Taylor*, the Seventh Circuit affirmed the exclusion of expert testimony as to the safety of smaller "yard" ballast because a layperson could understand that "a pile of large rocks is harder to stand on than a pile of smaller rocks." *Taylor*, 8 F.3d at 585-86. "While the [Seventh Circuit] did not address a preemption issue, the opinion indicates the FRA has not preempted the issue of ballast size[.]" *Hottenstein*, 1998 WL 378429, at *4.

Thus, this court concludes, consistent with the well-reasoned decisions of other district courts in this circuit and in the absence of Seventh Circuit precedent on this precise issue, that Clark's walkway ballast claim is not precluded by FRA regulations.

Even if not precluded by law, Clark must still show the existence of a genuine issue of material fact to survive summary judgment. Clark claims that he fell upon two or three loose rocks (in an area where there were "a whole bunch of them in a good section"), and the rocks were approximately six inches across. The railroad's expert opines that there were no six-inch rocks in the area; the ballast size in the area where Clark fell was 2 ½ to 3 inches which, even though larger than expected under AREMA and the railroad's own guidelines, reflected a reasonable attempt to enhance drainage in the area.

Thus, there exists a factual issue to be decided by a jury. The motion for summary judgment [32] is denied.

## CONCLUSION

---

[10] *Waymire v. Norfolk & Western Ry. Co.*, 218 F.3d 773, 775 (7th Cir. 2000) (holding there can be no FELA liability for conduct that meets the mandates of FRSA/FRA regulations). The employee in *Waymire* claimed that unsafe train speeds and inadequate warning devices caused a train-truck collision at a crossing, causing the employee to suffer post traumatic stress. *Waymire*, 218 F.3d at 774. The speed was well below the maximum speed mandated by the regulations, and the warning devices were "federally funded, operating, installed, and approved" according to federal regulations. *Waymire*, 218 F.3d at 774, 777.

The motion for summary judgment [32] is denied. A final pretrial conference is scheduled for Monday, November 5, 2007 at 1:45 p.m. by personal appearance. Jury selection and jury trial will begin on Tuesday, November 13, 2007 at 9:00 a.m.

Entered this 4th day of October, 2007.

                                **s\Harold A. Baker**
                      _____
                                HAROLD A. BAKER
                        UNITED STATES DISTRICT JUDGE